UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL BURKS, #239979,

                Petitioner,

v.

SHIRLEE HARRY,

                Respondent.

Case No. 09-13331

HONORABLE STEPHEN J. MURPHY

_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS** (docket no. 1),
**DENYING A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED _IN FORMA PAUPERIS_ ON APPEAL**

Petitioner Paul Burks has filed a _pro se_ application for the writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254. Burks was convicted in 2005 of being a felon in possession of a firearm. He claims that the evidence was insufficient to support his conviction, that the trial court made errors, that the prosecutor engaged in misconduct, that his trial and appellate attorneys were ineffective, and that his sentence is invalid. The state courts' adjudications of these claims was objectively reasonable. Therefore, the petition is denied.

**BACKGROUND**

A.  The Charges and Trial Testimony

Burks was charged with (1) armed robbery, (2) felon in possession of a firearm, (3) assault with a dangerous weapon, and (4) possession of a firearm during the commission of, or attempt to commit, a felony. Burks waived his right to a jury trial and was tried before

Judge John O'Hair in Wayne County Circuit Court on August 24, 2005.

Raynell Freeman testified at Burks' trial that, on April 5, 2005, she was looking for an automated teller machine (ATM) on Fenkell Street in Detroit when she saw Burks driving a small, red car. Burks and his female passenger stopped to talk with her. She asked them if they knew anyone who wanted to buy some food stamps because she needed to buy some pants and could not get her ATM card to work. After Burks offered to buy Freeman's food stamps, Ms. Freeman got in the car and went to the grocery store with Burks and his companion. She gave the food stamps or her debit card number to Burks, who went inside the store and came back out with some food, which he put in the car. From there, they went to some friends' house where Burks put the food away. He gave her cocaine rather than cash for her food stamps, and when she complained that she wanted money for the stamps, Burks said, "Well, that's all I have to offer." He left the house for about thirty or forty minutes, but came back.

Ms. Freeman, Burks, and two other people subsequently got in Burks' car and went to a different friend's house on Hubbell Street. Burks promised to acquire some pants for Freeman, but then he said she owed him some money. A friend ultimately provided Freeman with some pants, and Burks then offered to take her home. When they left the house, Burks pulled a handgun out of his pocket and showed it to her. He put the gun back in his pocket, and the two of them left in Burks' car.

As Burks was driving towards Coyle Street, he ordered Freeman to hand over her earrings, her finger ring, and anything else that he could use. When Freeman refused, Burks hit her with the back of his hand. Then he stopped the car, put his arm around her neck, and touched her neck with a pocket knife. Freeman gave Burks her earrings, but she

2

hid her ring in her sock.  Burks subsequently backed into a driveway on Coyle Street where he got out and argued with three men.  After one man tried to hit Burks, he got back in the car and demanded Freeman's ring once again.  She told him that she did not have the ring. Burks then stopped the car, grabbed a rifle from the trunk of the car, and put the rifle between their car seats.  He once again demanded her ring and hit her repeatedly, but she got away and ran across the street to someone's house.  A man came to the door of the house and offered to call the police for her.  She did not see Burks when the police arrived, but his car was parked in a nearby yard, and someone told her that Burks was taken away in an ambulance.

Police officer Bettie Cabbil testified that she responded to a call about an incident near Fenkell and Coyle Streets at approximately 10:30 p.m. on April 5, 2005.  The nature of the call was person with a weapon.  Raynell Freeman was on the porch of the house at 15378 Freeland Street where Officer Cabbil parked.  An EMS unit was three or four houses away tending to Burks, who was injured and unconscious.  A red Honda Prelude vehicle was parked on the grass in a neighbor's yard about three or four houses away from Burks. After receiving some information about ownership of the car, Officer Cabbil investigated it. No one was in it, but she found a sword or machete, along with some groceries and a television, in the back seat of the car.  There was a black case containing a shotgun in the partially open trunk of the car.

B.  The Stipulations, Motion for a Directed Verdict, and Closing Arguments

The parties stipulated that Burks had been convicted of a prior felony and was not eligible to possess a firearm.  Defense counsel then moved for a directed verdict of acquittal on the ground that the firearm in evidence was not operable.  The trial court

3

denied the motion after noting that a gun does not have to be operable for purposes of the felony firearm and felon-in-possession charges.  Burks declined to testify and did not present any witnesses.

The prosecutor's theory was that Burks owned money to some men in the neighborhood for a drug debt and that he attempted to pay his debt by taking jewelry from Ms. Freeman at gunpoint.  Defense counsel pointed out in his closing argument that, contrary to Ms. Freeman's testimony, the gun in question was in the trunk of the car when the police found it.  Defense counsel argued that the only testimony about Burks being in possession of the firearm came from Ms. Freeman, who was not credible.  Defense counsel maintained that Burks was merely present with Ms. Freeman and that the prosecutor failed to establish beyond a reasonable doubt that Burks possessed, used, transported, or carried a firearm.

Defense counsel also claimed that the prosecution had not proved the essential elements of the assaultive crimes.  He pointed out that, even though Ms. Freeman claimed to have been frightened, she also testified that she fought back when Burks hit her.

C.  The Verdict, Sentence, Appeals, and Habeas Petition

The trial court found Burks guilty of being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f.  The court acquitted Burks of the other three charges and initially sentenced Burks to imprisonment for five to fifteen months.   Two weeks after sentencing Burks, the trial court re-sentenced him as a habitual offender to a term of five months to five years.

In an appeal of right, Burks argued that there was insufficient evidence to support his conviction and that his sentence was invalid.  The Michigan Court of Appeals affirmed

4

Burks' conviction and sentence in an unpublished, *per curiam* opinion. *See People v. Burks*, No. 265909 (Mich. Ct. App. Feb. 6, 2007). Burks raised the same issues in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the issues. *See People v. Burks*, 479 Mich. 862 (2007) (table).

Burks raised several new issues in a motion for relief from judgment. The trial court denied Burks' motion in a reasoned opinion on April 10, 2008. Burks attempted to appeal the trial court's decision, but the Michigan Court of Appeals dismissed his delayed application without prejudice for failure to pursue the appeal in conformity with the court rules. Burks then applied to the Michigan Supreme Court, which denied leave to appeal a second time because it was not persuaded to review the issues. *See People v. Burks*, 483 Mich. 979 (2009) (table).

Burks filed his habeas corpus petition on August 24, 2009. He claims that: (1) his conviction should be reversed due to insufficient evidence; (2) the re-sentence was invalid; (3) the trial court subjected him to multiple punishments for the same offense; (4) his sentence violates the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004); (5) he was denied due process of law by the lack of a timely notice of the prosecutor's intent to enhance his sentence for recidivism; (6) the trial court interfered with his cross-examination of the State's key witness; (7) the trial court's verdict was against the great weight of the evidence; (8) trial counsel was ineffective; (9) the prosecutor failed to correct perjured testimony; (10) the trial court abused its discretion by refusing to give him 157 days of jail credit against his parole offense; (11) appellate counsel was ineffective and "cause" for the failure to raise certain issues on direct appeal; and (12) the trial court deprived him of due process of law by

5

depriving him of an opportunity to develop a factual record to support his claim of ineffective assistance of trial counsel.

The State argues in an answer to the petition that Burks' first claim (insufficient evidence) lacks merit and that Petitioner's second claim (invalid sentence) is not cognizable on habeas review in addition to being waived. The State also contends that claims three through eleven are procedurally defaulted because Burks failed to raise the claims in his direct appeal and that Burks failed to exhaust state remedies for his twelfth claim. Neither exhaustion, nor procedural default, are jurisdictional limitations, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010), and this Court has found no merit in Burks' claims. The Court therefore will proceed to address the substantive merits of Burks' claims, using the following standard of review.

## STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the

6

writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786. To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on a claim "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

**ANALYSIS**

A. The Weight and Sufficiency of the Evidence

The first habeas claim alleges that Burks' conviction should be reversed due to insufficient evidence, and the seventh habeas claim alleges that the trial court's verdict was against the great weight of the evidence. The latter claim is a state-law argument, and a federal habeas court is allowed to review only issues of federal law. *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). Thus, Burks' great-weight-of-the-evidence argument is not cognizable on habeas corpus review.

7

The former claim – that the evidence was insufficient to support Burks' conviction – raises a constitutional issue and is cognizable on habeas review. The Michigan Court of Appeals adjudicated the claim on direct review and concluded that the evidence was sufficient to sustain Burks' conviction.

The relevant question on habeas review "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

To prove the elements of felon in possession of a firearm, the prosecution must establish that the defendant was convicted of a prior felony, that he possessed a firearm, and that three or five years, depending on the prior felony, had not elapsed after he paid all fines, served all terms of imprisonment, and completed all terms of probation or parole imposed for the offense. Mich. Comp. Laws § 750.224f*; People v. Perkins*, 262 Mich. App. 267, 269-70 (2004). After the statutory period has elapsed, the convicted felon is prohibited from possessing a firearm until his or her right to do so has been formally restored. *Perkins,* 262 Mich. App. at 270-71.

The parties stipulated that Burks had a prior felony conviction and was not eligible to possess a weapon.  (Tr. Aug. 24, 2005, at 20-21, 161-62.)  Thus, the only question is whether Burks possessed a firearm on April 5, 2005.

Possession of a firearm may be proved by circumstantial evidence.  *People v. Hill*, 433 Mich. 464, 469 (1989), and

8

> "possession" includes both actual and constructive possession. . . .   [A]
> person has constructive possession if there is proximity to the article together
> with indicia of control. Put another way, a defendant has constructive
> possession of a firearm if the location of the weapon is known and it is
> reasonably accessible to the defendant. Physical possession is not
> necessary as long as the defendant has constructive possession.

*Id.* at 470-71 (internal and end citations omitted).

Raynell Freeman testified that Burks retrieved a rifle from the trunk of the car that
he was driving and placed the rifle in the car between them.  This testimony was sufficient
evidence that Burks possessed a firearm. Although there was additional evidence that the
rifle was missing a part, a person can be found guilty of possessing a firearm even if the
firearm is not operable.  *People v. Peals*, 476 Mich. 636, 638, 656 (2006).

Burks alleges that he was not found with keys to the car where the gun was found,
that the car was not registered to him, and that his fingerprints were not present on the car.
In addition, Burks points out that he was found three or four houses away from the car
when the police searched it and found the gun.  According to Burks, the only evidence that
he drove the car came from Ms. Freeman, whose testimony was arbitrary, self-serving, and
convoluted.

The trial court stated that Ms. Freeman's testimony was "terribly confusing,"
"somewhat incoherent," and "at times conflicting."  (Tr. Aug. 24, 2005, at 178.)  The court
nevertheless accepted Ms. Freeman's testimony that she entered a vehicle which Burks
was driving.  A federal habeas court "does not reweigh the evidence or redetermine the
credibility of the witnesses whose demeanor has been observed by the trial court.  It is the
province of the factfinder to weigh the probative value of the evidence and resolve any
conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (internal

9

and end citation omitted).

Even if one discredits Ms. Freeman's testimony, Officer Bettie Cabbil testified that she found a gun in the trunk of a car that Ms. Freeman had pointed out to her and that someone else had said the car belonged to Burks. (Tr. Aug. 24, 2005, at 148-49, 152, 160.) A rational trier of fact could have inferred from all the evidence that Burks owned or had possession of the car and that he had proximity to the firearm with indicia of control. A rational trier of fact could have concluded that Burks constructively possessed the firearm.

If the Court had concluded that a rational trier of fact could not have found Burks guilty beyond a reasonable doubt, the Court would still have to "defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1081 (2010). The Michigan Court of Appeals stated on review of Burks' claim:

> Given that the evidence demonstrates that the gun was found in the trunk of a vehicle that defendant was driving on the day of the incident, we conclude that, viewing this evidence in the light most favorable to the prosecution, a reasonable trier of fact could infer that defendant constructively possessed the gun.

*Burks*, Mich. Ct. App. No. 265909, at 2. The Court of Appeals held "that the evidence was sufficient to support an inference by a reasonable trier of fact that defendant knew the gun was in the trunk and the gun was reasonably accessible to defendant." *Id.* This conclusion was objectively reasonable. Burks therefore has no right to relief on the basis of his sufficiency-of-the-evidence claim.

B.  The Sentence

The second, third, fourth, and tenth habeas claims pertain to Burks' sentence. Burks

contends for a variety of reasons that his initial sentence was valid and that his re-sentence is invalid.

### 1.  The Re-sentencing

Burks initially was sentenced to imprisonment for five to fifteen months.  He claims that the trial court erred when it re-sentenced him to a maximum sentence of five years.

In Michigan, the maximum sentence "is not determined by the trial judge but is set by law." *People v. Claypool*, 470 Mich. 715, 730  n. 14 (2004). The maximum sentence for felon in possession of a firearm is five years.  Mich. Comp. Laws § 750.224f(3).  When the trial court realized that it had erroneously sentenced Burks to a maximum sentence of fifteen months, it re-sentenced Burks to the statutory maximum of five years.  Defense counsel was present at the re-sentencing, and he agreed that the maximum sentence should be five years.  (Tr. Sept. 23, 2005, at 3-4.)  Because defense counsel explicitly agreed to the re-sentencing, the Michigan Court of Appeals concluded that Burks waived his claim.

Even if the claim were not waived, the initial sentence was invalid under state law. Trial courts may set aside and correct an invalid sentence even if the prisoner has already served part of his term. *Bozza v. United States*, 330 U.S. 160, 166 (1947); *see also* Mich. Ct. R. 6.429(A) (authorizing state courts to correct an invalid sentence).  Thus, there is no merit to Burks' claim that his sentence of five months to five years is invalid.

### 2.  Double Jeopardy

Burks alleges that his initial sentence of five months to fifteen months fell within the sentencing guidelines and was constitutional.  He claims that his current sentence violates his constitutional right not to be placed in double jeopardy, because the trial court re-

11

sentenced him to a five-year maximum term after the Michigan Department of Corrections took custody of him.

The Fifth Amendment to the United States Constitution provides that "no person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend. V.  But the fact that a defendant has been twice before a judge for sentencing and detained during the interim does not constitute double jeopardy when the initial sentence was invalid; no valid or enforceable sentence could be imposed if an inadvertent error could not be corrected.  *Bozza,* 330 U.S. at 166.  "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner."  *Id.* at 166-67.

Here, as In *Bozza*, the trial court merely "set aside what it had no authority to do . . . .  It did not twice put petitioner in jeopardy for the same offense.  The sentence as corrected, impose[d] a valid punishment for an offense instead of an invalid punishment for that offense."  *Id.* at 167 (citations and footnote omitted).  Burks, therefore, has no right to habeas relief on the basis of his double jeopardy claim.

3. *Apprendi* and *Blakely*

Burks asserts that, by increasing his maximum sentence, the trial court violated the principles of *Apprendi*, 530 U.S. at 466, and *Blakely*, 542 U.S. at 296.  The trial court adjudicated this claim on collateral review and determined that *Apprendi* and *Blakely* were not applicable.

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S.

12

at 490.  In *Blakely*, the Supreme Court stated "that the 'statutory maximum' for *Apprendi*

purposes is the maximum sentence a judge may impose solely on the basis of the facts

reflected in the jury verdict or admitted by the defendant."   *Blakely*, 542 U.S. at 303

(emphasis omitted).

Burks' maximum sentence was based solely on the statute, not on any additional

facts that the trial court took into consideration.  And because Burks' sentence did not

exceed the statutory maximum, *Apprendi* and *Blakely* are not applicable.

4.  <u>Jail Credit</u>

In his tenth claim, Burks alleges that the trial court abused its discretion by refusing

to afford him 157 days of credit for the time he spent in jail before his trial and sentencing.

Burks claims that the trial court violated the plain language of Mich. Comp. Laws § 769.11b,

which provides:

> Whenever any person is hereafter convicted of any crime within this state
> and has served any time in jail prior to sentencing because of being denied
> or unable to furnish bond for the offense of which he is convicted, the trial
> court in imposing sentence shall specifically grant credit against the sentence
> for such time served in jail prior to sentencing.

Burks was on parole when he allegedly committed the crime at issue in this case.

He raised his jail-credit claim at his sentencing and at the re-sentencing.  The trial court

denied the request on grounds that Burks was not entitled to credit against his new

sentence and, even though the law provided for credit against his parole case, it was up

to the Department of Corrections to issue credit in that case.  (Tr. Sept. 9, 2005, at 10;

Sept. 23, 2005, at 4-6.)  Burks raised the issue again in his motion for relief from judgment,

but the trial court stated that he had abandoned the issue by failing to provide documentary

evidence that he did not receive the sentencing credit.

13

This Court finds no merit in Burks' claim because "[a] prisoner has no right under the federal constitution to earn or receive sentencing credits." *Grays v. Lafler*, 618 F. Supp.2d 736, 747 (W.D. Mich. 2008) (citing *Moore v. Hofbauer*, 144 F. Supp.2d 877, 882 (E.D. Mich. 2001) (citing *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992)). A state court's interpretation and application of crediting statutes is a matter of state concern only, *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (*per curiam*)).

Furthermore, Burks was not entitled to credit on his sentence for felon in possession of a firearm; rather, he was eligible for credit on a prior sentence for which he was on parole at the time he purportedly committed the crime in question here. *People v. Seiders*, 262 Mich. App. 702, 705 (2004). The trial court was not obligated to grant credit on a sentence in another case. Therefore, Burks is not entitled to habeas relief on the basis of his claim about sentencing credits.

C. <u>The Prosecutor</u>

    1. <u>Untimely Notice</u>

Burks asserts in his fifth claim that the prosecution deprived him of timely notice of its intent to seek enhancement of Burks' sentence due to his status as a habitual offender. Under state law, the prosecutor must provide notice of intent to seek an enhanced sentence due to recidivism within twenty-one days of the date of the arraignment. Mich. Comp. Laws § 769.13(1); Mich. Ct. R. 6.112(F). Petitioner contends that the prosecutor charged him as a habitual offender, but failed to file a timely notice of intent to seek enhancement of the sentence.

14

The alleged violation of the notice provisions of Mich. Comp. Laws § 769.13(1) and Mich. Ct. R. 6.112(F) is not a basis for habeas relief, because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Furthermore, the trial court determined on review of this claim that Burks and his attorney did have notice of the prosecutor's intent to seek enhancement of the sentence. The trial court correctly noted that the prosecutor included notice in the felony information of intent to enhance the sentence. *See* ECF No. 10-9, at 41. According to the trial court, the notice also was read to Burks at his preliminary examination. Because Burks had notice of the prosecutor's intent, he has no right to relief on the basis of his claim that the prosecutor failed to provide timely notice of intent to enhance the sentence.

2. Alleged Perjury

In his ninth claim, Burks asserts that Raynell Freeman committed perjury at his trial and that the prosecutor violated his right to due process by failing to correct Ms. Freeman's perjured testimony. The trial court rejected this argument when adjudicating Burks' motion for relief from judgment. The trial court stated that Burks had presented no evidence that Freeman's testimony was false or that the prosecutor knew the testimony was false.

In his habeas petition, Burks gives the following example of alleged perjury: Ms. Freeman testified that Burks pointed a rifle out the window of the car (Tr. Aug. 24, 2005, at 141), but she later made the rhetorical comment, "[W]hy would he stick the barrel [of the gun] out the window?" (*Id.* at 142). As another example of perjury, Burks points to Ms. Freeman's testimony that Burks bought groceries with Ms. Freeman's debit card in exchange for money. (*Id.* at 42.) Ms. Freeman later testified that those groceries were

15

stored at a house on Marlow Street (*id.* at 43) even though Burks was forced out of the house (*id.* at 50) and even though Officer Cabbil testified that some groceries were found in the Honda Prelude (*id.* at 154). Burks concludes from this evidence that Ms. Freeman's testimony was irreconcilable and can be categorized as nothing but perjury.

Prosecutors may not deceive a court by knowingly presenting false evidence or by allowing false testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 153 (1972). But to prevail on his claim that the prosecutor used false testimony, Burks must show that (1) the testimony was actually false, (2) the false statements were material, and (3) the prosecutor knew the testimony was false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

Ms. Freeman was forty-one years old at trial (Tr. Aug. 24, 2005, at 36), and she said that she had finished a year and a half of college (*id.* at 137). Despite Freeman's mature age and educational level, her testimony was difficult to follow at times. The trial court had to ask for clarification more than once. *(Id.* at 49, 75-76.) At other times, the attorneys or the trial court had to ask Ms. Freeman to listen carefully to a question and not to talk until a question was posed to her or an objection was resolved. (*Id.* at 92, 104, 124, 127-31.) The trial court even asked her whether she had taken any medication. (*Id.* at 92.) Defense counsel accused her of lying, but the prosecutor described her as "confused." (*Id.* at 136.)

At the conclusion of the trial, the trial court described Ms. Freeman's testimony as "terribly confusing," "somewhat incoherent," and "at times conflicting." (*Id.* at 178.) The trial went on to say:

> What she has described . . . may have happened, possibly happened, maybe even more probably than not happened. But because of the character of the testimony, as a finder of fact I cannot conclude beyond a reasonable doubt

16

that her descriptions of the occurrence of the alleged crimes have a factual basis.

(*Id.*)

This is not to say that Ms. Freeman committed perjury. Mere inconsistencies, contradictions, or changes in testimony do not establish false testimony or perjury. *Lochmondy*, 890 F.2d at 822; *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993); *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991). Furthermore, Ms. Freeman claimed at one point that defense counsel was upsetting her and that his questions had confused her somewhat. (Tr. Aug. 24, 2005, at 104, 137.) On another occasion, she said that she thought the attorneys were trying to confuse her. (*Id.* at 129.) It does not appear that she was lying. Even if she did lie under oath, there is no reason to believe that the prosecutor knew she was lying. The Court therefore finds no merit in Burks' claim that the prosecutor suborned perjury.

D.  Cross-Examination

In his sixth claim, Burks alleges that the trial court interfered with his right of confrontation by limiting his cross-examination of Raynell Freeman. Specifically, Burks claims that his attorney was prevented from asking Ms. Freeman where he purportedly pointed the gun. Burks claims that Ms. Freeman evaded defense counsel's question, and, if the trial court had heard the impeachment evidence, there is a reasonable likelihood the court would have acquitted Burks on all the charges. The trial court rejected this claim in its order denying Burks' motion for relief from judgment because defense counsel's inquiries were repetitive and because the court had discretion to limit the cross examination.

17

1.  Clearly Established Federal Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution applies to the States and "guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.' The right of confrontation includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (citing *Pointer v. Texas*, 380 U.S. 400, 404, 406-07 (1965)).  Cross-examination may be used to test the believability of a witness and to reveal a witness's biases, prejudices, or motivation for testifying.  *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974).

Trial courts, however, have broad discretion to limit the scope of cross-examination by precluding "repetitive and unduly harassing interrogation."  *Id.* at 316.  When, as here,

> it is merely the *extent* of cross-examination that is limited, the trial judge retains a much wider latitude of discretion, though of course that discretion may be abused.
>
> [T]he test in such circumstances is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory. "[O]nce cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied."

*Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989) (emphasis in original) (citations omitted).


2.  Application

Ms. Freeman testified on direct examination that Burks retrieved a rifle from the trunk of his car, placed the gun inside the car between the two of them, and pushed the gun against her.  (Tr. Aug. 24, 2005, at 55-56.)  On cross-examination, she testified that the rifle was pointed down, that the top part of the rifle hung out the window, and that it never

18

changed positions. (*Id*. at 110-13.) Defense counsel then asked Ms. Freeman about her testimony at the preliminary examination where she said that the handle of the rifle had been touching her and the barrel had been sticking out the window. Ms. Freeman responded that she did not recall being asked those questions or giving those answers and that she did not know anything about guns, but she did know that the gun had to be down because she saw the barrel. (*Id*. at 113-14.) On re-direct examination, Ms. Freeman explained that the window, which she had mentioned earlier in her testimony, was the sunroof in Burks' car and that she remembered seeing the gun sticking out that window. (*Id*. at 131-32.)

On re-cross examination, defense counsel asked Ms. Freeman whether at any other time, she had mentioned that the car had a sunroof and that the barrel of the gun had been sticking out the window. Ms. Freeman responded that she did not know what she had said, but she remembered that the gun had been sticking out the window. Defense counsel then pointed out that Ms. Freeman had previously said the gun was pointed down toward the floor. Ms. Freeman agreed. The questioning continued as follows:

> Q [by defense counsel]. [T]hen you said that the barrel was sticking out of the window; is that correct? You want me to direct you to where you testified to that?
>
> A [by Ms. Freeman]. I know the gun – why would he stick the barrel out the window so the police can see the barrel out the window?
>
> Q. Ma'am, I am not answering questions. I'm asking you.
>
> A. Okay. But I was – I mean as you show me the gun –
>
>     THE COURT: She did give that testimony. Let's move on.

(*Id*. at 142.)

19

Although the trial court did prevent defense counsel from asking additional questions, defense counsel had already questioned Ms. Freeman about the gun and the direction it was pointed. Additionally, defense counsel had already demonstrated that Ms. Freeman's testimony about the position of the rifle was confusing and even contradictory. The trial court had enough information with which to appraise Ms. Freeman's credibility and to assess the defense theory that Freeman was not credible. Therefore, the restriction placed on defense counsel's cross-examination of Ms. Freeman did not violate Burks' right of confrontation.

Even if constitutional error occurred, Burks was convicted of only one charge (felon in possession of a firearm), and the position of the rifle in the car was immaterial. The critical question was whether Burks actually or constructively possessed the rifle. In making that determination, the trial court credited Officer Bettie Cabbil's testimony. Thus, the alleged error during re-cross-examination of Ms. Freeman could not have a "substantial and injurious effect or influence" on the trial court's findings and conclusion of law. *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993). The alleged error was harmless.

E.  Trial Counsel

The eighth habeas claim alleges ineffective assistance of trial counsel. Although Burks raised several claims about his trial attorney in his motion for relief from judgment, the trial court concluded that none of the reasons asserted by Burks established ineffective assistance.

1.  Clearly Established Federal Law

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), is clearly    established    federal    law    for    purposes    of    evaluating    an

20

ineffective-assistance-of-counsel claim. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). Under Strickland, an attorney is constitutionally ineffective if his or her "performance was deficient" and "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687.

To establish deficient performance, a habeas petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

To demonstrate that counsel's performance prejudiced the defense, a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).  "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (internal and end citations omitted).

2. <u>Failure to Object to the Sentence</u>

Burks claims that his trial attorney was ineffective for failing to object to the imposition of a new sentence, which subjected him to multiple punishments for the same offense.  As explained above, however, the trial court merely set aside an invalid sentence.

21

The new sentence did not violate Burks' right not to be twice placed in jeopardy for the same offense. *Bozza*, 330 U.S. at 166.   Therefore, defense counsel was not ineffective for conceding that the new sentence was necessary.

Burks also contends that defense counsel should have objected to Burks being sentenced as a habitual offender because the recidivist notice was not timely filed.  As previously explained, however, Burks and his attorney were notified early in the case of the prosecutor's intent to seek enhancement of the sentence based on Burks' recidivism.  An objection would have been futile, and an attorney is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d  456, 459 (6th Cir. 1998).

3.  Failure to Impeach and to Present a Substantial Defense

Burks claims next that his attorney failed to present a substantial defense and failed to impeach Raynell Freeman with her motive, interest, and bias.  Failure to impeach a witness can amount to ineffective assistance when it deprives a defendant of a meaningful defense. *See Blackburn v. Foltz*, 828 F.2d 1177, 1184, 1186 (6th Cir. 1987).  But to prevail on his claim, Petitioner must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

There was no reason to believe that Ms. Freeman was biased against Burks or had any reason to fabricate her allegations.  Furthermore, defense counsel defended the case on grounds that Ms. Freeman was not credible and that there was no proof beyond a reasonable doubt that Burks possessed a firearm.  Defense counsel was successful in getting Burks acquitted of three of the four charges, and the trial court relied primarily on

22

Officer Cabbil's testimony when concluding that Burks was guilty of the remaining charge. The Court therefore finds no merit in Burks' contention that defense counsel failed to present a substantial defense or was ineffective for failing to impeach Ms. Freeman with her allegedly improper motive and bias.

### 4.  The Failure to Investigate, Call Witnesses, and Move for a Continuance

Burks claims that defense counsel should have conducted an investigation,  called *res gestae* witnesses,  and moved for a continuance to allow Burks to testify.  Attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . .  [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

Burks has not alleged what he or *res gestae* witnesses would have said if they had testified.  Nor has he alleged what additional investigative work might have uncovered. Therefore, he has no right to relief on his claim that trial counsel was ineffective for not investigating, for not calling *res gestae* witnesses, or for failing to move for a continuance so that he could testify.

### 5.  Failure to Request a Fingerprint Expert

Burks alleges next that defense counsel should have moved for appointment of a fingerprint expert to establish that Burks was not the driver of the Honda Prelude and did not possess a gun.  The absence of fingerprints would not necessarily have established Burks' innocence because there could have been a number of reasons why there were no fingerprints on the car.  Furthermore, there was substantial evidence that Burks had been in the car.  Ms. Freeman testified that Burks was the driver of the car, and Officer Cabbil

23

testified that someone had informed her the car belonged to Burks. For these reasons, defense counsel's failure to request a fingerprint expert did not amount to ineffective assistance.

### 6. The Alleged Stipulation Regarding Possession of a Firearm

Burks' final allegations about defense counsel are that defense counsel did not know the pertinent law and stipulated to Burks being in possession of a firearm. Burks has not shown how defense counsel's alleged ignorance of the law prejudiced him, and the contention that defense counsel stipulated to the elements of the offense is not supported by the record. Defense counsel argued that Burks was merely present with Ms. Freeman on the day in question and that there was no evidence, other than Ms. Freeman's incredible testimony, that he possessed a gun or was even near the car where the gun was found.

Defense counsel did stipulate that Burks had a prior felony conviction and was not eligible to possess a weapon. (Tr. Aug. 24, 2005, at 20-21.) But the stipulation likely was a trial tactic to prevent the trial court from learning the nature of the prior conviction. *See People v. Swint*, 225 Mich. App. 353, 379 (1997) (acknowledging a defendant's right to stipulate to the existence of a prior felony conviction without disclosing the nature of the prior conviction). Burks does not deny having a prior conviction, and the prosecutor no doubt could have proved the existence of the prior conviction through the use of public records if defense counsel had not stipulated to the prior conviction. Trial counsel, therefore, was not ineffective for stipulating to the prior conviction.

### F. Appellate Counsel

The eleventh claim alleges that appellate counsel was ineffective during the direct appeal and "cause" for Burks' failure to raise claims three through ten on direct appeal.

24

The trial court stated on review of this claim that counsel could not be deemed ineffective for failing to make meritless arguments.

The proper standard for evaluating a habeas claim about appellate counsel is the standard enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Burks must demonstrate that his appellate attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687.

The "deficient performance" prong of the two-part *Strickland* test requires showing that appellate counsel made an objectively unreasonable decision to raise other issues in place of the petitioner's claims. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). Burks must show that his claims are clearly stronger than the issues counsel presented to the Michigan Court of Appeals. *Id.* (quoting *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009) (quoting *Robbins*, 528 U.S. at 285, 288). To demonstrate "prejudice," Burks must show a reasonable probability that he would have prevailed if his attorney had raised all his claims on appeal. *Id.* (citing *Robbins*, 528 U.S. at 285).

The habeas claims which were not raised in the appeal of right allege that: Burks was subjected to multiple punishments for the same offense; his sentence violates *Apprendi* and *Blakely*; the prosecutor did not file a timely notice of intent to enhance Burks' sentence for recidivism; the trial court violated Burks' right of confrontation; the verdict was against the great weight of the evidence; trial counsel was ineffective; the prosecutor failed to correct perjured testimony; and the trial court refused to award jail credit. This Court has evaluated each of these claims and found no merit in them. Because the claims lack merit, defense counsel was not ineffective for failing to raise the claims on direct appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1013

(2011).

G.  The Lack of an Opportunity to Develop a Factual Record

The twelfth and final habeas claim alleges that the trial court deprived Burks of due process by depriving him of an opportunity to develop a factual record to support his claims about trial counsel.  Burks raised his claim about trial counsel on collateral review of his conviction.  His claim has no merit because alleged deficiencies in a state's post-conviction procedures "relate to a state civil matter, not the custody of a defendant."  *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)).  Consequently, a claim that some error occurred during state post-conviction proceedings is not cognizable on federal habeas corpus review.  *Id.*

## CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not disagree with the Court's resolution of Burks' claims.  The Court therefore declines to issue a certificate of appealability on any of Burks' claims.

26

**CONCLUSION AND ORDER**

The state court decisions in this case were not contrary to clearly established federal law as determined by the Supreme Court, an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.

**WHEREFORE**, it is hereby **ORDERED** the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court **DENIES** a certificate of appealability on all twelve claims presented in the habeas petition.

**IT IS FURTHER ORDERED THAT** Burks may proceed *in forma pauperis* on appeal because he was granted leave to proceed *in forma pauperis* in the District Court.  Fed. R. App. P. 24(a)(3).

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge


Dated: February 9, 2012


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 9, 2012, by electronic and/or ordinary mail.

Carol Cohron
Case Manager